UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THE BANK OF NEW YORK MELLON, solely in its capacity as trustee for 4.125% Notes due 2022 issued by Samarco Mineração S.A.,

           Plaintiff,

     - against -

SAMARCO MINERAÇÃO S.A.,

           Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No. 1:20-cv-8206 (JPC)

**DECLARATION OF TIMOTHY GRAULICH**

Pursuant to 28 U.S.C. § 1746, Timothy Graulich declares as follows:

1. I am an attorney admitted to practice before this Court and a partner at Davis Polk & Wardwell LLP ("Davis Polk"). I am counsel for an ad hoc group of noteholders (the "Noteholders") of the defaulted notes (the "Notes") at issue in this matter, as well as counsel for Plaintiff The Bank of New York Mellon as Trustee ("Plaintiff"). I submit this declaration on behalf of Plaintiff in support of its Memorandum of Law in Opposition to Defendant's Motion to Dismiss or Stay.

2. The Noteholders retained Davis Polk on March 5, 2019. Prior to this date, in early 2019, Samarco Mineração S.A. ("Defendant" or "Samarco") had cut off all substantive contact with the Noteholders with respect to the Notes. For the duration of Davis Polk's involvement in this process, Samarco has neither made a proposal for restructuring or settlement to the Noteholders nor engaged in related negotiations.

3. Starting in the Spring of 2019, the Noteholders made attempts through their advisors to resume negotiations with Samarco Mineração S.A. ("Defendant" or "Samarco").

Specifically, the Noteholders requested (1) the resumption of a due diligence process, and (2) non-disclosure agreements ("NDAs") with the Noteholders' legal advisors, as well as the customary extension of preexisting NDAs with the Noteholders' financial advisors, that would permit access, on an "advisors only" basis, to Samarco's financial and business information. Samarco did not entertain any of the requests for NDAs with the Noteholders' legal advisors and has not permitted due diligence by the Noteholders or their advisors of a type that would be customary in my experience for parties preparing to engage in restructuring negotiations. During this time, Samarco additionally refused to engage with the Noteholders and their advisors on a non-confidential basis, including failing to provide a requested timeline for a negotiation process, or even acknowledgment of an interest in engaging with financial creditors.

4. On October 25, 2019, Samarco reached a major operational milestone by receiving its Corrective Operating License that would permit it to resume operations. Despite reaching this milestone, Samarco did not contact the Noteholders.

5. On November 14, 2019, nearly three weeks after Samarco received its Corrective Operating License, I sent Samarco a letter on behalf of the Noteholders in an attempt to restart negotiations (the "November 14, 2019 Letter"). A true and correct copy of the November 14, 2019 Letter is attached as Exhibit 1.

6. The November 14, 2019 Letter explained that "operating success is critical not only to repayment . . . , but also to assure economic benefit for the surrounding communities and those most affected by the 2015 disaster." *Id*. at 1-2. The November 14, 2019 Letter stated unequivocally that the Noteholders were "ready and willing to resume negotiations toward a timely and consensual restructuring," and specifically requested "a proposed

timeline for the commencement of restructuring negotiations and any updates to your business plan" from Samarco. *Id*.

7. On December 3, 2019, Samarco replied to the November 14, 2019 Letter (the "December 3, 2019 Letter"). A true and correct copy of the December 3, 2019 Letter is attached as Exhibit 2.

8. Rather than substantively engage or respond to the specific requests in the November 14, 2019 Letter, the December 3, 2019 Letter claimed that "changes in the regulatory landscape" required "Samarco to re-evaluate and modify the Company's prior operational restart plans." *Id*. at 2. The December 3, 2019 Letter stated that Samarco expected "that process to conclude in the near future, at which point it is our intention to come back to you with next steps." *Id*.

9. Despite its stated intention in December 2019 to revert with "next steps in the near future," Samarco has still made no effort to propose restructuring or settlement terms or resume negotiations with Noteholders. While I understand Samarco has engaged in intermittent communications with financial advisors and a technical consultant retained by the Noteholders, Samarco has made no effort whatsoever to engage the Noteholders or enter into NDAs with their legal counsel.

10. On September 2, 2020, after nine months of voluntary forbearance while awaiting further engagement from Samarco, Plaintiff initiated the instant litigation.

11. In debt restructurings, it is not uncommon for negotiations to proceed in parallel with an active court process. Nevertheless, Samarco made no effort to re-engage with the Noteholders after this litigation was initiated.

12. On November 11, 2020, on behalf of the Noteholders and Plaintiff, I attempted to engage Samarco through its counsel, Cleary Gottlieb Steen & Hamilton LLP ("Cleary"), via another letter (the "November 11, 2020 Letter"). A true and correct copy of the November 11, 2020 Letter is attached as Exhibit 3.

13. The November 11, 2020 Letter reiterated the Noteholders' willingness to negotiate, particularly in response to Samarco's representations in its October 23, 2020 letter motion for conference filed with this Court. *See* Dkt. 16 at 1. The November 11, 2020 Letter also requested the same next steps that the Noteholders had requested over a year and a half before—"a customary NDA and a customary reimbursement letter," with a proposed goal of finalizing the agreements by Thanksgiving 2020. In the alternative, the November 11, 2020 Letter requested a timeline by which the Noteholders could expect to receive a proposal for a restructuring or workout.

14. On November 11, 2020, Samarco's counsel acknowledged receipt of the November 11, 2020 Letter, but did not otherwise respond to it. A true and correct copy of Samarco's November 11, 2020 email is attached as Exhibit 4.

15. On November 18, 2020, Davis Polk sent a follow-up email to Samarco's counsel asking when Davis Polk could expect a response, if any, from Samarco. A true and correct copy of the November 18, 2020 email is attached as Exhibit 5.

16. Later that day, Samarco's counsel stated that a response was forthcoming. A true and correct copy of Samarco's November 18, 2020 email is attached as Exhibit 6.

17. Samarco's counsel did not send a substantive response until December 1, 2020, the same date that this filing was due. The December 1, 2020 response once again promised a

4

restructuring proposal "[o]nce [Samarco's] updated business plan is completed." A true and correct copy of Samarco's December 1, 2020 response is attached as Exhibit 7.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 1, 2020
New York, NY

*/s/ Timothy Graulich*
Timothy Graulich
